## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIFDA
## PENSACOLA DIVISION

**MICHAEL HOGAN,**

      **Plaintiff,**                  **CASE NO. 3:18-cv-01332-MCR-CJK**

**v.**

**CITY OF FORT WALTON BEACH,
FLORIDA, and EDWARD J. RYAN, in his
official capacity as CHIEF OF POLICE OF
THE CITY OF FORT WALTON BEACH,
FLORIDA, and in his individual capacity,**

      **Defendants.**

_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CORRECTED AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND COMPLAINT FOR MONEY DAMAGES

### INTRODUCTION

This is an action by former police officer Michael Hogan against the City of Fort Walton Beach ("the City") and Edward J. Ryan, its Police Chief, in his individual capacity, arising out of his wrongful termination for actions ten years earlier and his wrongful stigmatization by Defendant as "Giglio-impaired," a designation that uncorrected will surely accomplish its intended purpose of precluding him from ever again being hired in a sworn law enforcement position. [ECF 1-1, pp. 93-112].

Defendants have now filed a Dispositive Motion to Dismiss the Corrected Amended Complaint for Declaratory Judgment and Complaint for Money Damages ("the Motion") [ECF 3], and this filing constitutes Plaintiff's response thereto.  The Motion should be in all respects denied.

## LAW AND ARGUMENT

I.     **Plaintiff withdraws his duplicative official capacity claim**.

In Section III-B-1 of the Motion [ECF 3, p. 9], Defendants argue that "[t]he official capacity claim against Chief Ryan is duplicative of the claims against the City, and therefore, it should be dismissed." Plaintiff agrees and hereby withdraws his claims against Defendant Ryan in his official capacity.

II.    **Plaintiff's Count I procedural due process claims should not be dismissed**.

In Section III-B-2 of the Motion [ECF 3, pp. 9-14], Defendants set forth two arguments for dismissal of Plaintiff's Count I procedural due process claims: "(1) Plaintiff did not have a property interest in his employment and thus no right to procedural due process; and (2) the purported right to procedural due process under these facts is not clearly established; therefore Ryan, in his individual capacity, is entitled to qualified immunity." Recognizing that the first argument appears to apply to the procedural due process claims against both Defendant City and Defendant Ryan, individually, and that the second argument applies only to the procedural due process claim against Ryan, individually, both arguments fail.

2

A.   <u>Plaintiff had interests protected by the due process clause of the Fourteenth Amendment</u>.

In the first subparagraph within Section III-B-2 of the Motion [ECF 3, pp. 10-12], Defendants argue that "[t]here is no property right, thus, no right to procedural due process." Such argument fails.

Preliminarily, Defendants argue, based on Eleventh Circuit decisions in <u>Economic Development Corp. v. Stierham</u>[1] and <u>Caruana v. Board of Education</u>,[2] that "in the absence of a protected property interest, the right to procedural due process does not apply."  Respectfully, neither of those decisions stands for the proposition that <u>only</u> property interests are subject to Due Process protection and

---

[1] 782 F.2d 952 (11th Cir. 1986).

[2] 493 Fed.Appx. 34 (11th Cir. 2012).

based on the language of Section 1 of the Fourteenth Amendment,[3] interests in

"life, liberty, or property" are all protected by the due process clause.[4]

The Supreme Court confirmed that all three of these interests are protected

under the Due Process clause in its 1980 decision in O'Bannon v. Town Court,[5]

recognizing "constitutionally protected interest[s] in life, liberty, or property."[6]

And eight years earlier in 1972 in Board of Regents v. Roth,[7] the Supreme Court

held in the government employment context that "[t]he requirements of procedural

due process apply… to the deprivation of interests encompassed by the Fourteenth

Amendment's protection of liberty and property."[8]

---

[3] The Fourteenth Amendment of the United States Constitution contains a Section 1 that reads as follows:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws..

[4] Id.

[5] 444 U.S. 773 (1980).

[6] Id., 444 U.S. at 790.

[7] 408 U.S. 564 (1972).

[8] Id., 408 U.S. at 568, emphasis added.

As shown in the paragraphs to follow, Plaintiff had both a property and a liberty interest in his employment as a police officer, the latter based on his interest in freedom from the stigma associated with being determined "Giglio-impaired" in conjunction with his termination.

1.  Plaintiff had a property interest in his employment as a police officer.

In its 1972 decision in Roth, addressing the property interest of an assistant professor in his continued employment at a state university, the Supreme Court defined such interest as follows:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules and understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in Goldberg v. Kelly, [397 U.S. 254 (1970)], had a claim of entitlement to welfare payments that were grounded in the statute defining eligibility for them…
>
> Just as the welfare recipients' "property" interest in welfare payments was created and defined by statutory terms, so the respondents' "property" interest in employment at Wisconsin State University-Oshkosh was created and defined by the terms of his appointment…[9]

---

[9] Id., 408 U.S. at 577-578.

And in its 1985 decision in <u>Board of Education v. Loudermill</u>,[10] after

determining the allegations set forth in the operative complaint insufficient to

support a liberty interest violation,[11] and therefore opining that "[r]espondents'

federal constitutional claim depends on their having a property right in continued

employment,"[12] the Supreme Court reaffirmed due process property rights to be

creatures of state law, as follows:

> Property interests are not created by the Constitution,
> "they are created and their dimensions are defined by
> existing rules or understandings that stem from an
> independent source such as state law."[13]

And most clearly of all, in the 1997 Supreme Court decision in <u>Gilbert v.

Homar</u>,[14] in presenting the court's unanimous decision, Justice Scalia opined as

follows:

> The protections of the due process clause apply to
> government deprivation of those perquisites of
> government employment in which the employee has a
> constitutionally protected "property" interest. …[W]e
> have previously held that public employees who can be

---

[10] 470 U.S. 532 (1985).

[11] <u>Id.</u>, 470 U.S. at 547 fn. 13.

[12] <u>Id.</u>, 470 U.S. at 538, citing and following <u>Roth</u> and <u>Reagan v. U.S.</u>, 182 U.S. 419 (1901).

[13] <u>Id.</u>, excerpting and following <u>Roth</u>, and citing and following <u>Paul v. Davis</u>, 424 U.S. 693 (1976).

[14] 520 U.S. 924 (1997).

> discharged only for cause have a constitutionally
> protected property interest in their tenure and cannot be
> fired without due process…[15]

It is not in dispute that Plaintiff could be discharged only for cause.

Turning to §112.532, Fla.Stats., as a basis for Plaintiff's property interest in his employment, Plaintiff recognizes that the statute, described as the police officers' bill of rights, contains a Subsection (4), which in turn contains a Paragraph (b), that concludes with a statement that "[t]his paragraph does not provide law enforcement officers with a property interest or expectancy of continued employment, employment, or appointment as a law enforcement officer."[16] However, first, in addition to not "provid[ing]" for such a property interest, that sentence does not remove such an interest otherwise provided by law—*e.g.*, under the Supreme Court decision in Gilbert for positions from which one can only be discharged for cause; second, that provision is self-limiting to "this

---

[15] Id., 520 U.S. at 928-929; see Ross v. Clayton County, 173 F.3d 1305, 1308 (11th Cir. 1999), citing Roth and citing and following Burnley v. Thompson, 524 F.2d 1233 (5th Cir. 1975), authoritative in the Eleventh Circuit (opining in connection with a Georgia county correctional officer that "Ross was only a probationary… employee. Typically, probationary employees are thought to lack property interests in their employment because they are 'at will' employees without a legitimate claim of entitlement to continued employment"). See also City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla. 1982) ("Where a party is entitled as a matter of right to seek review in the circuit court from administrative action, the circuit court must determine whether procedural due process is accorded…")

[16] Section 112.532(4)(b), Fla.Stats.

paragraph"—Paragraph (b) of Subsection (4) of Section 112.532; and third, the legislature's determination of a need to insert that statement within Paragraph (4)(b) of the statute strongly implies that every single other provision thereof does provide law enforcement officers with a property interest under the circumstances set forth therein.

Further, every published decision addressing the question of whether §112.532 determines a property interest in police officer employment has answered that question in the affirmative.[17]

And whether or not the underlying facts ultimately determine a property interest to pertain, at the pleadings stage, this court has held it sufficient to plead the existence of such an interest pursuant to §112.532, Fla.Stats. In its 2012

---

[17] Grice v. City of Kissimmee, 697 So.2d 186, 190 (Fla. 5th DCA 1997) ("We hold that the rights conferred by this provision give police officers a property interest in their positions"); Park v. City of West Melbourne, 927 So.2d 5, 8 (Fla. 5th DCA 2006), citing and following Grice ("a police officer who is not a probationary or at-will employee is entitled to a due process hearing before his termination is final"); Bailey v. Town of Lake Lady, 2007 WL 677995, *7 (M.D.Fla. 2007), excerpting and following Ross ("This statute sets forth a detailed series of procedures for investigating and/or disciplining law enforcement and corrections officers, up to and including termination. In other words, Fla.Stat. s. 112.532 'limits the power of the appointing body to dismiss an employee.' Accordingly, the court finds that, at least at this stage of the litigation, Bailey has established a property interest in his employment…" [emphasis added]); Emerson v. Bailey, 2009 WL 1930188, *8 (M.D.Fla. 2009), excerpting and following Grice and Bailey, and citing and following Park ("Despite the last sentence [of Paragraph 4(b)], the police officer's bill of rights has been construed as conferring a property interest in continuing employment for permanent, non-probationary officers").

decision in <u>Willingham v. City of Valparaiso</u>,[18] this court addressed the issue as

follows:

> To state a procedural due process claim, a plaintiff must
> plausibly allege: (1) a deprivation of a constitutionally
> protected liberty or property interest… The Eleventh
> Circuit has held that where a city policeman is an "at-will
> employee," "no property interest in continued
> employment protected by the Fourteenth Amendment"
> arises… The court has recognized, however, that a
> property interest can be created by an agency handbook
> of employee policies, or personnel rules requiring
> termination only for cause… Florida courts have
> recognized this principle as well… [T]he Florida
> Supreme Court has expressly noted that for purposes of
> procedural due process, "a property interest may be
> created by statute, ordinance or contract, as well as
> policies and practices of an institution which support
> claims of entitlement"…
>
> ***
>
> The plaintiff also claims a property interest through
> provisions of the Florida police officer's bill of rights,
> Fla.Stat. s. 112.532, which outlines certain procedural
> rights for a police officer under investigation. Courts
> have held that these procedures can create a property
> interest… Thus, taking the allegations of the complaint as
> true and in the light most favorable to the plaintiff, the
> plaintiff has stated an *arguable* property interest.[19]

---

[18] 2012 WL 12919319 (N.D.Fla. 2012).

[19] <u>Id.</u>, 201 WL 12919319 at *3-4, italics in original, citing and following <u>Finch v.
City of Vernon</u>, 877 F.2d 1497 (11th Cir, 1989); <u>Nicholson v. Gant</u>, 816 F.2d 597
(11th Cir. 1987); <u>Marshall v. City of Cape Coral</u>, 797 F.2d 1555 (11th Cir. 1986);
<u>Walton Health Care v. Palm Beach County</u>, 862 So.2d 852 (Fla. 4th DCA 2003);
<u>Moser v. Barron Chase</u>, 783 So.2d 231 (Fla. 2001); <u>Park</u>; <u>Dep't of Highway Safety</u>

That said, both of the decisions cited by Defendants on this point[20] are

inapposite, as those decisions deal with deputy sheriffs rather than police officers,

and both base their determinations of an absence of property interests on the

distinction between deputy sheriffs and other government employees.[21]

Therefore, this court should determine a property interest in his position to

have devolved upon Plaintiff.

> 2. Plaintiff had a liberty interest in the combination of his employment
>    and his reputation as a non-Giglio-impaired law enforcement officer.

While utterly ignored by Defendant, a liberty interest has been held to

pertain where state action causes reputational harm, in conjunction with tangible

---

v. Schluter, 705 So.2d 81 (Fla. 1st DCA 1997); Grice; Emerson; and Venero v. City
of Tampa, 830 F.Supp. 1457 (M.D.Fla. 1993).

[20] Brown v. Wheeler, 669 So.2d 318 (Fla. 4th DCA 1996); Sammons v. Cameron,
2005 WL 1027509 (M.D.Fla. 2005).

[21] Brown, 669 So.2d at 319, citing and following Szell v. Lamar, 414 So.2d 276
(Fla. 5th DCA 1982), Wilkerson v. Butterworth, 492 So.2d 1169 (Fla. 4th DCA
1986), and McRae v. Douglas, 644 So.2d 1358 (Fla. 5th DCA 1994), rev. den'd,
654 So.2d 919 (Fla. 1995) ("The question in this case is: '[w]hen is a deputy
sheriff unlike other law enforcement officers?' Unfortunately for the deputy in this
case, it is when termination of employment is at issue… Historically, deputy
sheriffs have not enjoyed any guarantees to employment. They have traditionally
been employed at the pleasure of the sheriff"); Sammons, 2005 WL 1027509 at *3,
citing and following McRae, Silver v. Bieluch, 351 F.3d 1045 (11th Cir. 2003),
Bussinger v. City of New Smyrna Beach, 50 F.3d 922 (11th Cir. 1995), and Stough
v. Gallagher, 967 F.2d 1523 (11th Cir. 1992) ("The complaint wisely does not
claim a property right to continued employment as a probationary deputy sheriff").

harm such as termination. Liberty interest due process applicability, known by the

short-hand phrase "stigma plus," was recognized by the Supreme Court in 1976 in

Paul. Justice Rehnquist addressed the application of due process protection to

reputational harm as follows:

> The words "liberty" and "property" as used in the
> Fourteenth Amendment do not in terms single out
> reputation as a candidate for special protection over and
> above other interests that may be protected by state law.
> While we have in a number of our prior cases pointed out
> the frequently drastic effect of the "stigma" which may
> result from defamation by the government in a variety of
> contexts, this line of cases does not establish the
> proposition that reputation alone, apart from some more
> tangible interests such as employment, is either "liberty"
> or "property" by itself sufficient to invoke the procedural
> protection of the due process clause…
>
> ***
>
> Thus, it was not thought sufficient to establish a claim
> under s. 1983 and the Fourteenth Amendment that there
> simply be defamation by a state official; the defamation
> had to occur in the course of the termination of
> employment.[22]

The interest described in Paul was labeled a "liberty" interest by the

Eleventh Circuit in its 2000 decision in Cotton v. Jackson,[23] as follows:

> Plaintiff claims that defendant Jackson effectively ruined
> his reputation by labeling him as a sexual harasser and by

---

[22] Paul, 424 U.S. at 701, 719.

[23] 216 F.3d 1328 (11th Cir. 2000).

terminating his employment without giving him an opportunity to be heard. We have said that—although damage to reputation, standing alone, does not provide a basis for an action under 42 U.S.C. 1983—when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983… To recover, a plaintiff must satisfy a six-factor test and show that "(1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) was made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing"…[24]

That said, Plaintiff has pled that he "was improperly designated 'Giglio impaired,'" and that "[d]ue to an officer's frequent duty to testify in various court

---

[24] Id., 216 F.3d at 1330, citing and following Campbell v. Pierce County, 742 F.2d 1342 (11th Cir. 1984), and excerpting and following Warren v. Crawford, 927 F.2d 559 (11th Cir. 1991), in turn excerpting and following Buxton v. City of Plant City, 871 F.2d 1037 (11th Cir. 1989). See Bell v. MARTA, 521 Fed.Appx. 862, 865 (11th Cir. 2013), citing and following Cotton ("Reputational damage sustained in connection with termination of government employment may give rise to a procedural due process claim for deprivation of liberty that is actionable under s. 1983"); see also Mackroy v. Charter School, 2006 WL 2864317, *4 (M.D.Fla. 2004) ("The Paul court explained that in order to invoke the procedural protections of the due process clause, a plaintiff would need to establish *more* than a mere defamation claim… The Paul court established what has come to be known as the 'stigma-plus' test. Cannon… Under the 'stigma-plus' test, 'a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation "plus" some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the due process clause.' Id. In considering what satisfies the 'plus' prong of this analysis, the Paul court looked to whether state action had significantly altered or extinguished 'a right or status previously recognized by state law.' Paul…" [italics in original]).

proceedings, the Giglio designation is devastating, [and] has tainted, and continues to adversely impact, Plaintiff's career and reputation." [See ECF 1-1, pp. 93-112, ¶ 32]. Courts addressing such designations have held them to constitute the "stigma" element of "stigma-plus" liberty interest violation.

Arising out of the 1972 Supreme Court decision in <u>Giglio v. U.S.</u>,[25] it has been held that "[a] Giglio impairment of a police officer refers to a prosecutor's decision not to allow an officer to testify at the trial of a criminal defendant because of the officer's prior misconduct or other grounds to attack the officer's credibility."[26] In its 2017 decision in <u>Espinosa v. Lynch</u>,[27] the District of Arizona recognized the implication of a liberty interest where "plaintiff's employment was terminated 'based solely on' the 'Giglio letter.'"[28]

And in its 2017 decision in <u>Stockdale</u>, the Middle District of Tennessee was even clearer on termination based on a Giglio letter determining a liberty interest, as follows:

> Plaintiffs also allege that they have constitutionally protected liberty interests in their professional reputations that have been damaged by defendants' false claims and accusations of Giglio impairment. A person's reputation,

---

[25] 405 U.S. 150 (1972).

[26] <u>Stockdale v. Helper</u>, 2017 WL 3503243, *1 (M.D.Tenn. 2017).

[27] 2017 WL 781460 (D.Ariz. 2017).

[28] <u>Id.</u>, 2017 WL 781460 at *2.

> good name, honor, and integrity are among the liberty
> interests protected by the due process clause of the
> Fourteenth Amendment… Defamation alone, however, is
> not enough to invoke due process concerns… Some
> alteration of a right or status previously recognized by
> state law, such as employment, must accompany the
> damage to reputation… Consequently, when an
> employee shows that he has been stigmatized by the
> voluntary, public dissemination of false information in
> the course of a decision to terminate his employment, the
> employer is required to afford him an opportunity to clear
> his name…[29]

Therefore, separate and apart from its required determination that Plaintiff has satisfactorily pled the violation of a property interest, this Court should also conclude that Plaintiff has satisfactorily pled the violation of a liberty interest.

### B. Ryan is not entitled to qualified immunity on the Count I procedural due process claim against him.

In the second subparagraph within Section III-B-2 of the Motion [ECF 3, pp. 12-14], Defendants argue that the right to procedural due process under these facts is not clearly established; therefore, Ryan is entitled to qualified immunity. [id., p. 10]. Such argument fails.

The doctrine of qualified immunity derives from the 1982 Supreme Court decision in Harlow v. Fitzgerald,[30] in which the court "h[eld] that government

---

[29] Stockdale, 2017 WL 3503243 at *4, citing and following Quinn v. Shirey, 293 F.3d 315 (6th Cir. 2002).

[30] 457 U.S. 800 (1982).

officials performing discretionary functions[ ] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[31] Respectfully, even if Ryan was acting within his discretionary authority—Plaintiff asserts that he was not—this court would be required to rule that the law determining both property and liberty interests set forth in the previous section is "clearly established."

Addressing the "clearly established" element in its 2002 decision in Hope v. Pelzer,[32] the Supreme Court added flesh to the skeleton set forth twenty years earlier in Harlow, as follows:

> [T]he fair warning requirement is identical under [criminal statute 18 U.S.C.] s. 242 and the qualified immunity standard.  We pointed out that we had "upheld convictions under s. 241 and s. 242 despite notable factual distinctions between the precedents relied on and the cases before the court, so long as the prior decisions gave a reasonable warning that the conduct at issue violated constitutional rights"…[33]

---

[31] Id., 457 U.S. at 818, citing Procunier v. Navarette, 434 U.S. 555 (1978), and Wood v. Strickland, 420 U.S. 308 (1975).

[32] 536 U.S. 730 (2002).

[33] Id., 536 U.S. at 740, citation omitted, following U.S. v. Lanier, 520 U.S. 259 (1997). See Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful [citation omitted]"). See also Akins v. Fulton County, 420 F.3d 1293, 1305 (11th Cir, 2005), applying Hope and following Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002) ("To demonstrate that the law is

Further, in its 2010 decision in Rehberg v. Paulk,[34] the Eleventh Circuit set forth a three-prong inquiry required of this court in considering "clearly established":

> This fair and clear notice requirement may be met in [any one of] three ways: (1) the words of the pertinent federal statute or constitutional provision may be so specific as to clearly establish the law even in the total absence of judicial decisions interpreting the law; (2) "some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable to different sets of detailed facts"; and (3) …when we lack explicit statutory or constitutional pronouncement and broad case holding, we look to precedential cases that are tied to their particular facts.[35]

_____

clearly established, a party is not required to cite cases with materially similar facts… [A] constitutional provision can give fair warning when its words are specific enough that they 'establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law'" [emphasis added]); Oladeinde v. Birmingham, 118 F.Supp.2d 1185, 1197 (N.D.Ala. 1998), aff'd in pertinent part, 230 F.3d 1275 (11th Cir. 2001) ("This court readily concedes that, if Walker had carefully checked Westlaw or Lexis fifteen minutes before the derringer incident, he would have found no decision by the Eleventh Circuit or the Supreme Court holding that a police captain violates the First Amendment if he places a derringer and two bullets on his desk while denying a subordinate her request to visit a prosecutor with information about possible criminal activity by their police chief").

[34] 611 F.3d 828 (11th Cir. 2010), aff'd, 132 S.Ct. 1497 (2012).

[35] Id., 611 F.3d at 846 fn. 15, citations omitted, following Vinyard; see also Smith v. McNesby, 2007 U.S.Dist.Lexis 83520, p. 79 (N.D.Fla. 2007), excerpting and following Holloman ("'A principle of constitutional law can be "clearly established" even if there are "notable factual distinctions between the precedents relied on and the cases then before the court," so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights.'

Recognizing that only Supreme Court, Eleventh Circuit—and predecessor Fifth Circuit--and Florida Supreme Court decisions may be relied upon in showing the law "clearly established,"[36] based on case law set forth above, this court should determine the law as to satisfaction of both a pertinent property interest and a pertinent liberty interest clearly established under both the second and third Rehberg prongs. More specifically, this court should determine the law clearly established pertinent to Plaintiff's property interest based on Supreme Court decisions in Roth, Loudermill, and Gilbert, on the Eleventh Circuit decision in Ross, on the predecessor Fifth Circuit decision in Brumley, and on the Florida Supreme Court decision in Vaillant. And the law was clearly established pertinent to Plaintiff's liberty interest based on the Supreme Court decision in Paul and on the Eleventh Circuit decision in Cotton.

That said, addressing another issue ignored in the Motion, Defendants have simply failed to show—or even address—the requirement for qualified immunity

---

Holloman…"); Salter v. McNesby, 2007 U.S.Dist.Lexis 62712, p. 50 (N.D.Fla. 2007)(same).

[36] Marsh v. Butler County, 268 F.3d 1014, 1033 fn. 10 (11th Cir. 2001) (*en banc*), citing and following Jenkins v. Talladega, 115 F.3d 821 (11th Cir. 1997) ("When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state").

that Ryan was performing a discretionary function. In its 2017 decision in

Espinosa, while the District of Arizona granted dismissal of a due process claim on

the rather basic ground that "[d]efendants did not employ plaintiff, nor did

defendants terminate plaintiff's employment,"[37] the court cited approvingly the

plaintiff's argument that "'at a minimum, discovery should be permitted to

determine policies, procedures, and guidelines as to how letters such as the one in

this case are issued and whether they are, in fact, a discretionary prosecution

function.'"[38]

      Therefore, both based on Defendants' failure to show—or even address—the

discretionary nature of Ryan's actions and case law cited above making the law as

to both a property interest and a liberty interest clearly established, dismissal of

Plaintiff's Count I procedural due process claim against Ryan should be denied.

### III.    Plaintiff's Count II substantive due process claim should not be dismissed.

      In Section III-B-3 of the Motion [ECF 3, pp. 14-16], Defendants set forth

two arguments for dismissal of Plaintiff's Count II substantive due process claims:

"(1) Plaintiff did not have a substantive due process right to employment, and (2)

the purported substantive right to employment under these facts is not clearly

---

[37] Espinosa, 2017 WL 781460 at *2.

[38] Id., fn. 10, emphasis added.

established; therefore, Ryan, in his individual capacity, is entitled to qualified immunity." Again, recognizing that the first argument applies to substantive due process claims against both Defendants, and that the second argument applies to Plaintiff's substantive due process claim against Ryan, both arguments fail.

A. <u>Plaintiff's rights to avoid stigma and participate in his chosen profession are protected by substantive due process</u>.

In the first subparagraph within Section III-B-3 of the Motion [ECF 3, pp. 15-16], Defendants argue that "[t]here is no substantive right to government employment." While Defendants are correct that there is no substantive right to a particular employment position, the stigma to which Plaintiff has been subjected, undermining his right to any position in his chosen profession, is in fact protected by substantive due process.

First generally, as early as 1923 in <u>Meyer v. Nebraska</u>,[39] the Supreme Court held that the liberty guaranteed by the Fourteenth Amendment "denotes not merely freedom from bodily restraint but also the right of the individual to contract[ and] to engage in any of the common occupations of life…"[40]

Then in 1972 in <u>Roth</u>, admittedly a procedural due process case, relying on <u>Meyer</u> the Supreme Court recognized a government employee's substantive right

---

[39] 262 U.S. 390 (1923).

[40] <u>Id.</u>, 262 U.S. at 399.

to be free from stigma precluding employment in his chosen field, opining that "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."[41]

More specifically, and also controlling upon this court, in its 1982 decision relying on Roth in Clemons v. Dougherty County,[42] the Eleventh Circuit held stigma precluding one's prospective ability to work a fundamental right protected by substantive due process, as follows:

> Because Clemons' discharge, standing alone, was not such a blight upon his good name, reputation, honor, or integrity as to constitute a deprivation of liberty, his mere discharge—whether for no reason or for permissible reasons—did not implicate the due process requirements of the Fourteenth Amendment… To prevail on his Fourteenth Amendment claim, Clemons must first establish that his termination was attended by stigmatizing charges which 'might seriously damage his standing and associations in his community' or foreclose 'his freedom to take advantage of other employment opportunities'…"[43]

---

[41] Roth, 408 U.S. at 575, excerpting and following Meyer.

[42] 684 F.2d 1365 (11th Cir. 1982).

[43] Id., 684 F.2d at 1371, excerpting and following Dennis v. S&S, 577 F.2d 338 (5th Cir. 1978), authoritative in the Eleventh Circuit, and citing and following Roth and Kaprelian v. Texas Women's University, 509 F.2d 133 (5th Cir. 1975), also authoritative in the Eleventh Circuit; see also Bussinger v. City of New Smyrna Beach, 50 F.3d 922, 925 fn. 4 (11th Cir. 1995) (recognizing a potential "substantive due process violation grounded on [a plaintiff's] liberty interest to be free from stigma").

Then, in its 1999 decision in <u>Conn v. Gabbert</u>,[44] the Supreme Court opined that "this court has indicated that the liberty component of the Fourteenth Amendment's due process clause includes some generalized due process right to choose one's field of private employment…"[45]

Therefore, Plaintiff has satisfactorily pled Defendants' substantive due process violations.

B. <u>Ryan is not entitled to qualified immunity on the Count II substantive due process claim against him</u>.

In the second paragraph within Section III-B-3 of the Motion [ECF 3, p. 16], Defendants argue that "[t]he substantive due process right to government employment under these facts is not clearly established; therefore, Ryan is entitled to qualified immunity."  Incorporating the recitation of qualified immunity law set

_____

[44] 526 U.S. 286 (1999).

[45] <u>Id.</u>, 526 U.S. at 291-292, citing and following <u>Dent v. West Virginia</u>, 129 U.S. 114 (1889), and <u>Truax v. Raich</u>, 239 U.S. 33 (1915). See <u>Liu v. University of Alabama</u>, 330 Fed.Appx. 775, 780 (11th Cir. 2009), citing and following <u>Conn</u>, <u>Roth</u>, and <u>Clemons</u> ("The Supreme Court has recognized that the liberty component of the Fourteenth Amendment's due process clause includes the right to pursue a profession"); <u>Lofton v. Dep't of Children</u>, 377 F.3d 1275, Anderson dissent from denial of rehearing *en banc* at 1304 (11th Cir. 2004), excerpting <u>Lawrence v. Texas</u>, 539 U.S. 558 (2003) ("the [Supreme C]ourt [in <u>Lawrence</u>] explicitly decided to rest its holding on a substantive due process analysis because it found that if a sodomy law 'remained unexamined for its substantive validity, its stigma might remain even if it were not enforceable as drawn for equal protection reasons'").

21

forth in Section II-B above, based on the Supreme Court and Eleventh Circuit decisions determining a fundamental right to be free of stigma precluding future employment cited in the previous section—and also based on Defendants' failure to demonstrate discretionary action on the part of Ryan--this argument for qualified immunity also fails.

IV.   **Count III is viable**.

In Sections III-B-4, Defendant claims that Plaintiff has no rights under §112.532(1) because he was not under investigation nor subject to interrogation. But it is clear based on the allegations in paragraphs 23-33, set forth below, that the 2006 investigation was reopened in 2016 without the rights afforded to Plaintiff under §112.532(1):

23.     On August 1, 2016, Captain Hart called Plaintiff at home requesting his presence at the Police Department for a meeting with Chief Ryan. During the meeting, Chief Ryan, Captain Hart, and Human Resources Director Tarey Franxman served Plaintiff with a Notice of Disciplinary Hearing scheduled for the following day, August 2, 2016.

24.     On August 2, 2016, Plaintiff attended the hearing accompanied by Fraternal Order of Police ("FOP") Legal Representative Shawn Dockery, as well as Chief Ryan, Captain Hart, and Franxman. But there was no hearing. Instead, Plaintiff was immediately terminated. In response, Plaintiff argued that terminating him in this manner violated rights provided to him through the Police Officers Bill of Rights and asked Chief Ryan for the basis of his abrupt termination. Chief Ryan expressed that the determination was made based upon his 2006 disciplinary file, a letter Chief Ryan sent to State Attorney William Eddins, and a response letter from Chief Assistant State Attorney, William ("Bill") Bishop.

25.     Plaintiff then requested a copy of the documents Chief Ryan relied upon for his termination; however, Chief Ryan did not provide the documents, only stating he "would" provide them. Without further explanation, Plaintiff was

subsequently stripped of his badge, weapon, and keys and escorted out of the building, into the parking lot and to his vehicle.

26.   Two days later, on August 4, 2016, Plaintiff received the documents Chief Ryan relied upon for his termination and timely filed a request for a Disciplinary Appeal Hearing. On August 5, 2016, Plaintiff visited the State Attorney's Office to meet with Assistant State Attorney Bishop; however, Bishop was unavailable. Plaintiff then left copies of his discipline file relative to the 2006 incident for Bishop's further review. Plaintiff did not obtain a response from Bishop regarding the request to review the file, but later responded on August 24, 2016, as noted below.

27.   On August 10, 2016, Plaintiff attended the Disciplinary Appeal Meeting with Ryan, Hart, Franxman, and FOP Legal Representative Dockery. Plaintiff inquired as to whether Chief Ryan, Human Resources, and City staff reconsidered his termination. Plaintiff was told "no" and informed that he could ask no further questions; he could only present facts and/or information. Therefore, Plaintiff reiterated his position previously stated during the August 2, 2016 termination meeting:

(a)   Chief Ryan's act of terminating him constituted double jeopardy, and

(b)   Chief Ryan's actions were a clear violation of several sections of Chapter 112, *Florida Statutes.*

28.   During the August 10, 2016 Disciplinary Appeal Hearing, in accordance with FWB written policy and Chapter 112, Florida Statutes, Plaintiff inquired of Chief Ryan about a Notice of Intent that would have permitted him to request convening of a Complaint Review Board. This constituted his initial request to convene the Complaint Review Board. At the end of the Disciplinary Appeal meeting, the result remained the same, with Chief Ryan insistent upon upholding Plaintiff's termination and no response regarding the Notice of Intent or the Complaint Review Board. Plaintiff was then directed to send all future correspondence, if any, to Franxman and to have no further contact with anyone at the FWB. To date, no hearing has been held for Plaintiff to contest his termination nor the events that followed that referenced below.

29.   On August 15, 2016, the FOP Representative contacted Assistant State Attorney Bill Bishop to request an additional review of the case. Bishop's response was that he had no intention of reviewing the case as it was not their agency's purview to question the disclosure of *Brady/Giglio* concerns by Chief Ryan.

30.   On August 16, 2016, Plaintiff again requested the convening of a Complaint Review Board, which was subsequently denied on August 18, 2016.   The decision to deny Plaintiff's right to a Complaint Review Board

was made by Captain Hart, acting in Chief Ryan's absence. The denial stated in part, "In this particular case, you were not under investigation, there were no external complaints, there was no internal administrative investigation or interrogation and there was no recommendation through the chain of command for discipline."

31.    On August 24, 2016, Bishop responded to Plaintiff that he had already responded to Chief Ryan in the July 26, 2016 letter to state the State Attorney's position and there was no need to meet with Plaintiff to discuss the matter.

32.    As a result, Plaintiff was improperly designated G*iglio* impaired". The opinion Ryan solicited and relied upon as a basis for Plaintiff's termination essentially rendered Plaintiff "*Giglio*-impaired." *See Giglio v. United States*, 405 U.S. 150 (1972).  Due to an Officer's frequent duty to testify in various court proceedings, the *Giglio* designation is devastating, has tainted, and continues to adversely impact Plaintiff's career and reputation.

33.    Not only did Chief Ryan improperly reopen the ten-year-old investigation to use as a basis for Plaintiff's termination, Ryan misrepresented the facts of Plaintiff's 2006 incident when he solicited the State Attorney's opinion.  In this letter, Ryan informed State Attorney Eddins that Plaintiff had a "substantiated case of making false statements concerning an employee during an internal investigation. This incident took place on September 21, 2006."

[ECF 1-1, Amended Complaint].

Count III requests a declaratory judgment that Plaintiff was, in fact, under investigation and that he was entitled to the protections of §112.532(1).  This claim, based on the allegations above, specifically that Plaintiff was subjected to a Disciplinary Hearing and Defendant refused to provide copies of documents upon which it relied in making a decision to discipline Plaintiff, is viable.

V.   **Count IV is viable**.

Plaintiff agrees to dismissal of Count IV.

24

VI.   **Count V is viable**.

In Sections III-B-6, Defendant again claims that Plaintiff has no rights because he was not under investigation.  But §112.532(6)(a) is clear that disciplinary action may not be taken against a law enforcement officer for any act, omission, or other allegation for misconduct unless it is taken within 180 days of receipt of notice of the allegation.  Here, there was a 10 year gap between notice of the allegations and the Plaintiff's termination.  Notice had already been given to him in 2006 and disciplinary action had already been taken against Plaintiff at that time.  There is no defense to the strict requirement of discipline being taken within the 180 day period required by this law ten years after the fact and Count V should not be dismissed.  Not one of the exceptions listed under §112.532(6)(a) could ever apply in this case to extending an investigation after 10 years.

VII.   **Count VI is viable**.

In Sections III-B-7, Defendant again claims that Plaintiff has no rights because he was not under investigation.  But he was under investigation back in 2006 for the violation and he was disciplined.  Section112.532(6)(b) is clear that there are very specific reasons for an investigation to be reopened, none of which apply here.  At the very least, there is a factual issue, improper for resolution on a motion to dismiss, as to whether there was an investigation in 2006 and then again in 2016.  Count VI should not be dismissed.

VIII. **Plaintiff's Count VII conspiracy to violate civil rights claims should not be dismissed**.

In Section III-B-8 of the Motion [ECF 3, pp. 21-25], Defendants seek dismissal of Plaintiff's Count VII claims for conspiracy to violate civil rights, brought through 42 U.S.C. 1985.  This argument fails too.

Defendant's first argument for dismissal of Plaintiff's conspiracy claim is an incorporation of its earlier constitutional arguments: "[t]here is no constitutional right to employment or to Plaintiff's 'good name.'" In response, Plaintiff incorporates his arguments set forth above, pursuant to which there are procedural due process rights based on his property and liberty interests in his position, and substantive due process rights to be free from stigma serving to preclude future employment in his chosen field. Therefore, this argument against conspiracy fails.

Defendant's second argument for dismissal of Plaintiff's conspiracy claims is based on the 2017 Supreme Court decision in <u>Ziglar v. Abbasi</u>,[46] precluding conspiracy between "two agents of the same legal entity" [id., p. 23]. That decision does not address allegations of conspiracy between distinct entities, including a conspiracy between Defendant City and Ryan. Therefore, Count VII should not be dismissed based thereon.

---

[46] 137 S.Ct. 1843 (2017).

Defendant's third argument for dismissal of Plaintiff's conspiracy claims, itself expressed in conclusory terms, is that "[c]onspiracy claims based on communications between members of the City and others fail to allege sufficient facts to place Defendants on notice of their allegedly unconstitutional conduct." [ECF 3, p. 24]. While Defendants' arguments in regard to the underlying constitutional violations subject of the conspiracy claims—and even in regard to the conspiracy claims themselves—belie their insufficient notice argument, in the event this court were to deem Count VII insufficiently pled, Plaintiff requests dismissal thereof to be without prejudice to curing such insufficiency by amendment.

Defendant's fourth and final argument for dismissal of Plaintiff's conspiracy claims simply incorporates qualified immunity arguments earlier presented on behalf of Ryan. Based on the responses to those arguments set forth above here incorporated—both that the law was clearly established and that Defendants have not shown Ryan's actions to be discretionary—this argument for qualified immunity also fails.

**CONCLUSION**

Accordingly, based on authorities set forth above, with the exception of Plaintiff's withdrawal of the official capacity and statutory claims, the Motion should be in all respects denied.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
310 East Bradford Road
Tallahassee, FL 32303
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF WORD COUNT AND FONT

I hereby certify that there are 6,945 words in this document and it is prepared

in 14 point font.

/s/ Marie A. Mattox
Marie A. Mattox

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via CM/ECF
on this 1st day of June, 2018 to all counsel of record.

/s/ Marie A. Mattox
Marie A. Mattox

28